NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| F.C.V., INC. individually and as a representative of all others similarly situated, | : <br> : **Hon. Dennis M. Cavanaugh** <br> : |
| Plaintiffs, | : **OPINION** <br> : Civil Action No. 04-CV-5035 (DMC) |
| v. | : <br> : |
| STERLING NATIONAL BANK, | : |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon application of Class Plaintiff F.C.V., Inc. ("Plaintiff") pursuant to Fed. R. Civ P. 23(e) for Final Approval of the Settlement Agreement with Defendant Sterling National Bank ("Defendant"). A hearing on the application for Final Approval was held by this Court on May 9, 2006. For the reasons set forth below, the Court grants Class Plaintiff's application and approves the Settlement Agreement.

### I. BACKGROUND

*Procedural History*

On September 17, 2004, Plaintiff filed a Class Action Complaint against Defendant Sterling on behalf of a class consisting of all persons and entities that entered into agreements with NorVergence, Inc. ("NorVergence") for the lease of electronic equipment marketed by NorVergence to be utilized in connection with telecommunication services. Defendant was sued

in its capacity as a holder in due course of the lease agreement paper.  The Complaint sought damages as well as declaratory and injunctive relief terminating Plaintiff's obligation to make lease payments to Defendant based upon claims under the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. 56:8-2 et seq., for equitable fraud, common law fraud and negligent representation.  Defendant filed its Answer on March 15, 2005, denying any wrongdoing and all liability with respect to any or all of the facts of claims alleged in the Complaint, denying that it committed any violation of the law and asserting various affirmative defenses.

       The parties executed a Settlement Agreement on January 20, 2006.  On January 31, 2006, this Court preliminarily approved the Settlement, and entered an Order with Respect to Notice, Settlement Hearing and Administration designating class counsel, approving the proposed form of notice to the class and certifying the action to proceed pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of the following class:

> all business and non-profit entities throughout the United States that, according to Defendant's records, entered into a "Rental Agreement" or "Equipment Rental Agreement" with NorVergence, Inc. for the use of telecommunications equipment supplied by the company which agreements were acquired by Defendant and under the terms of such agreement there existed and continues to exist a balance due as of the date of the Settlement Agreement, as well as the guarantors of such Rental Agreements or Equipment Rental Agreements.

Order with Respect to Notice, Settlement Hearing and Administration, January 31, 2006, ¶1.

This Court held a Fairness Hearing on May 9, 2006.  If approved, the proposed settlement agreement will completely resolve this action.

*Factual History*[1]

       Plaintiff is a New Jersey corporation with offices in Hackensack, New Jersey.  (Comp.

---

[1] The factual history in this Opinion is based upon the Complaint filed in the instant action.

¶2.)  Defendant is a banking corporation in the business of leasing and/or financing the lease of telecommunications equipment.  (Comp. ¶3.)  According to the Complaint, Plaintiff and all other class members contracted with Sterling Leasing for the rental of telecommunications equipment marketed under the name "MATRIX" by NorVergence, or entered into such leases with NorVergence and then had their leases assigned to Defendant or Sterling Leasing.  (Comp. ¶4.)

At all time relevant up until July 14, 2004, NorVergence was engaged in providing telecommunication services to small businesses.  (Comp. ¶14.)  The corporation maintained its principal offices at 550 Broad Street, Newark, New Jersey.  (Id.)  On August 14, 2004, the United States Bankruptcy Court for the District of New Jersey entered an Order converting an involuntary proceedings against NorVergence to a Chapter 7 liquidation proceeding.  (Id.)  Charles Forman, Esq. was appointed as Trustee for NorVergence and the corporation officially ceased any further business activities.  (Id.)

Prior to its bankruptcy, NorVergence solicited small businesses both within and outside the State of New Jersey to utilize its services as a reseller of telecommunications services.  (Comp. ¶15.)  Specifically, NorVergence represented to potential customers that it could reduce the cost of telephone and internet services on an ongoing basis through the use of a proprietary technology labeled as MATRIX.  (Id.)  In the Spring of 2003, salesmen employed by NorVergence solicited Plaintiff to utilize NorVergence's services.  (Comp. ¶16.)  As part of the solicitation, NorVergence represented that Plaintiff would be able to save a minimum of thirty percent of its current telecommunications costs if it agreed to utilize NorVergence services.  (Comp. ¶17.)  Specifically, NorVergence agreed that it would provide Plaintiff with local and long distance telephone service, cellular telephone service and broadband internet service for a

monthly price thirty percent lower than the amount paid by Plaintiff for said services at the time in question. (Id.)  On May 29, 2003, Plaintiff entered into an agreement with NorVergence for telecommunication services.  (Comp. ¶18.)  In response, NorVergence requested that Plaintiff sign an Equipment Rental Agreement ("Rental Agreement") under which Plaintiff agreed to pay $696.08 per month (plus applicable taxes) for a period of five years for the rental of a "MATRIX."  (Id.)  On or about June 23, 2003, the Rental Agreement was assigned to Defendant Sterling.  (Id.)  Prior to its bankruptcy filing, NorVergence paid for the Plaintiff's local and long distance telephone charges, internet access and cellular phone charges.  (Comp. ¶20.)

In the wake of the NorVergence bankruptcy filing, Plaintiff became aware that NorVergence had not developed any proprietary technology nor did it develop what it asserted to be MATRIX hardware.  (Comp. ¶21.)  Rather, NorVergence purchased equipment from Adtran, Inc., an electronics equipment manufacturer based in Huntsville, Alabama.  (Id.)  The equipment labeled MATRIX was in fact either Adtran's "total access 750", "total access 850" or Adtran's "netvanta 2050."  (Id.)  These devices can be utilized for establishing networks within offices so that internet access can be shared by many users.  (Id.)  The equipment rented by Plaintiff and other class members did not in any way impact the amount of money paid by class members for their telephone and internet services.  (Comp. ¶22.)  Rather, the MATRIX hardware was simply part of an elaborate scheme to defraud under which Plaintiff and other class members were led to believe that the use of NorVergence services would provide them with cost savings in their use of telephone and internet services.  (Id.)

At the end of August 2004, it was reported in the press that approximately 11,000 small

business customers had entered into agreements with NorVergence to obtain discounted telecommunication services. (Comp. ¶23). NorVergence in turn reached agreements with as many as thrity-five different financing and leasing companies, including Defendant Sterling, under which NorVergence arranged for the sale and/or assignment of various leases or arranged for the initial creation of direct leases between small business customers and the leasing company with respect to the MATRIX equipment. (Id.) As a result of these financial arrangements, NorVergence received from the Defendant and other leasing companies monetary consideration for the sale and assignment of such leases and used that consideration, for a time period, to pay the customers' telephone bills. (Id.)

At present, NorVergence is in bankruptcy liquidation and has virtually no assets. (Comp. ¶24.) As a result, Plaintiff and other class members must now pay for all their local, long distance, cellular, and internet services at normal market price. (Id.) Defendant Sterling has maintained that the Rental Agreements are still enforceable and has demanded Plaintiff and other class members make all remaining payments due, despite the fact that the MATRIX equipment being rented is entirely useless and of little or no value. (Id.)

*Proposed Settlement Agreement*

The Settlement Agreement, filed with this Court on January 31, 2006, sets forth financial and equitable relief Defendant has agreed to provide to all class members. The salient provisions of the settlement agreement are as follows:

> (1) Defendant agrees to forgive any late fees, attorneys' fees, or other costs that may have been assessed on each Class Member's account from July 15, 2004 through the date the Settlement Agreement becomes final...and reduce the Balance Due by 33%;

   (2) Defendant will afford Class Members the opportunity to pay the Settlement Balance in installments or a lump sum;
   (3) With respect to those Class Members against whom Sterling previously filed suit and obtained a judgment, said judgment shall be reduced by 33% and, upon the Class Member's completing all payments due in accordance with the Settlement, Defendant will file a Warrant of Satisfaction of Judgment;
   (4) Defendant will abandon any right, title and interest in the telecommunications equipment involved in this litigation;
   (5) Defendant will withdraw any and all adverse credit reports filed by it with respect to Class Members as a result of failure to make any payments on the Rental Agreements;
   (6) Defendant will pay for Notice to the Class of the class action and proposed settlement; and
   (7) Defendant will pay attorneys' fees in such amount as may be approved by the Court.

(Settlement Agreement, January 31, 2006, ¶11.)

## II. Approval of the Settlement Agreement

"The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." Girsh v. Jepson, 521 F.2d 153, 156 (3d Cir.1975). In exercising that discretion, the Court is guided by Federal Rule of Civil Procedure 23(e). That rule provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs." Fed.R.Civ.P. 23(e). In determining whether to approve a class action settlement under Rule 23(e), " 'the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members' " In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig., 55 F.3d 768, 785 (3d Cir.1995) (quoting Grunin v. Int'l House of Pancakes, 513 F.2d 114, 123 (8th Cir.), cert. denied, 423 U.S. 864 (1975) (citation omitted));see also In re Linerboard Antitrust Litigation, 321 F.Supp.2d 619, 628 (E.D.Pa. 2004).

Before giving final approval to a proposed class action settlement, the Court must determine that the settlement is "fair, adequate, and reasonable." Lazy Oil Co. v. Witco Corp., 166 F.3d 581, 588 (3d Cir. 1999); Walsh v. Great Atlantic & Pacific Tea Co., 726 F.2d 956, 965 (3d Cir.1983). The Third Circuit has identified nine factors that a district court should consider when making this determination:

(1) the complexity, expense and likely duration of the litigation;
(2) the reaction of the class to the settlement;
(3) the stage of the proceedings and the amount of discovery completed;
(4) the risks of establishing liability;
(5) the risks of establishing damages;
(6) the risks of maintaining the class action through the trial;
(7) the ability of the defendants to withstand a greater judgment;
(8) the range of reasonableness of the settlement fund in light of the best possible recovery;
(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

In re Prudential Ins. Co. of America Sales Practices Litig., 148 F.3d 283, 317 (3d Cir.1998), quoting Girsh v. Jepson, 521 F.2d 153, 157 (3d Cir.1975). "These factors are a guide and the absence of one or more does not automatically render the settlement unfair." In re American Family Enterprises, 256 B.R. 377, 418 (D.N.J. 2000). Rather, the court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under Girsh. In re Orthopedic Bone Screw Prod. Liability Litig., 176 F.R.D. 158, 184 (E.D.Pa.1997).

**(1)     The Complexity, Expense and Likely Duration of the Litigation**

The first factor "is intended to capture the probable costs, of both time and money, of continued litigation." In re Lucent Technologies, Inc., Securities Litigation, 307 F. Supp. 2d 633,

642 (D.N.J. 2004) (quotation omitted).  This litigation began over two years ago and the parties have already expended a great deal of time and energy.  Nonetheless, the parties anticipate that if the litigation were to proceed there would be more discovery, extensive motion practice and trial preparation.  In addition, the parties note that litigation of this case would involve intricate legal questions of consumer fraud, statutory construction, intent, contract interpretation, causation and damages.  Such circumstances could extend the litigation another few years, a factor that weighs in favor of approval.

**(2)     The Reaction of the Class to the Settlement**

The second factor "attempts to gauge whether members of the class support the settlement." In re Lucent at 643 (quotation omitted).  In the instant action, a Court-approved Notice of Settlement was distributed to class members via first class mail within thirty days of this Court's January 31, 2006 Order.  (See Order, ¶6.)  Approximately 161 members of the 274 class members contacted submitted correspondence that is to be considered opt-outs from the settlement.  Plaintiff's counsel also received two timely objections to the settlement from class members Newco Marketing and Graffiti Inc. who noted their objections to the amount of the discount afforded the class.  Plaintiff's counsel also received three letters that purported to be objections but were determined to be out of time and therefore invalid.  All objections to the settlement were to be filed with the Court and served upon counsel by April 25, 2006, two weeks before the settlements hearing scheduled for May 9, 2006.  All of the above opt-outs and objections were reviewed and considered by this Court.[2]  (See

---

[2] Although this Court received numerous opt-out letters and several explanations in support of the opt-outs as well as the several objections mentioned earlier, not one person or representative of any entity appeared in Court to voice an objection.

Fairness Hearing May 9, 2006, Court Exhibits A and B.)

This Court is particularly concerned by the fact that almost sixty percent of class members chose to opt-out of the Settlement Agreement. On the other hand, the number of objectors is minimal in light of the number of notices sent. See In re Cendant Corp. Securities Litigation, 109 F.Supp.2d 235, 257 (D.N.J. 2000) (citing Stoetzner v. United States Steel Corp., 897 F.2d 115, 118-19 (3d Cir.1990) (29 objections in a 281 member class indicates class favors settlement); In re Prudential, 148 F.3d at 318 (affirming conclusion that class reaction was favorable where 19,000 policyholders out of 8 million opted out and 300 objected)). It must be acknowledged that this case is atypical in that it affords equitable as opposed to financial relief to the class members. Many of the opt-outs have indicated in their letters that they feel to be the victims of fraud and as such are resistant to any monetary obligations. The Settlement Agreement at hand does not eliminate monetary obligations, or apportion liability, but rather reduces class members monetary liability by thirty-three percent. Some class members will still pay tens of thousands of dollar to Defendant.[3] In light of the unique circumstances of the Settlement Agreement, the Court is satisfied that the number of opt-outs is not related to the fair, reasonable and adequate nature of the settlement. As such, the Court finds that the reaction of the class to the settlement weighs in favor of settlement approval.

**(3)     The Stage of the Proceedings and the Amount of Discovery Completed**

Next, "[p]arties should have an 'adequate appreciation' of the merits in settling a case." In

---

[3]Defendant claims that it too, is a victim. NorVergence defrauded the Plaintiff class members and then turned around and sold the lease agreement paper to Defendant. Defendant claims no knowledge of the fraud and further claims to be victim of a fraud itself. Defendant claims it purchased these lease agreements in good faith.

re Prudential, 148 F.3d at 319 (quoting In re Gen. Motors Corp., 55 F.3d at 813). This litigation is still in the pre-trial stage. However, settlements reached at earlier stages of proceedings are favored. In re AremisSoft Corp. Securities Litigation, 210 F.R.D. 109, *124 (D.N.J. 2002) (citing In re Computron Software, Inc., 6 F.Supp.2d 313, 318; Weiss v. Mercedes-Benz of North Am., Inc., 899 F.Supp. 1297, 1301 (D.N.J.1995) (settlement approved while the "case is still in the early stages of discovery"); In re Novacare Sec. Litig., [1995-1996 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 98,930 at 93,500, 1995 WL 605533 (E.D.Pa. Oct. 13, 1995) ("[O]ne of the benefits of settlement at an early stage is avoidance of the expense of extended discovery that might well effect [sic] plaintiffs' proof at trial. When the parties reach an early settlement, it must be fair, adequate, and reasonable but not necessarily identical with the results that might be reached at trial.")).

The Court also notes that even though class counsel reached the settlement before engaging in extensive formal discovery, the parties have engaged in extensive document discovery over the past year which involved inspection of a significant amount of documents. It is evident from the submissions of the parties and the issues raised by the parties at the Fairness Hearing that the parties had a full appreciation of the merits during negotiations. As such, this factor weighs in favor of approval.

**(4)(5)  The Risks of Establishing Liability and Damages**

In considering the fourth and fifth factors, a court should "survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of immediate settlement." In re Prudential, 148 F.3d at 319. Here, the parties concede that the outcome of the litigation is not certain. Plaintiffs would have to

prove overcome numerous, plausible defenses raised by Defendant in its Answer, including its defense that the claims are barred by the parties' contract under a provision commonly known as a "hell or high water" clause.  Courts regularly enforce "hell or high water" clauses.  See e.g., Lyon Financial Services, Inc. v. Woodlake Imaging, LLC, 2005 WL 331695, *4 (E.D.Pa. 2005); Colorado Interstate Corp. v. The CIT Group/Equipment Financing, Inc., 993 F.2d 743 (10th Cir.1993); Siemens Credit Corp. v. Amer. Transit Ins. Co., 2001 U.S. Dist. LEXIS 264 (S.D.N.Y.2001); The Philadelphia Savings Fund Soc. v. Deseret Management Corp., 632 F.Supp. 129 (E.D.Pa.1985). This is true even "in the face of various kinds of defaults by the party seeking to enforce them." Wells Fargo Bank, N.A. v. BrooksAmerica Mortgage Corp., 419 F.3d 107, 110 (2d. Cir. 2005) (quoting In re O.P.M. Leasing Servs., Inc., 21 B.R. 993, 1006-07 (Bankr.S.D.N.Y.1982).  As such, Plaintiff's counsel concedes that should this litigation proceed there is a significant risk that class members would have to pay the full balance due under the leases as well as a late fees and other charges thereunder stipulated.

With respect to damages, Plaintiffs face the challenge of establishing proximate cause for success on the Consumer Fraud Act claim.  See New Jersey Citizen Action v. Schering Plough, 267 N.J. Super 8, 15 (App. Div. 2003)(identifying the elements of a CFA claim to include a causal nexus between the defendants' unlawful conduct and the plaintiff's unascertainable loss.)  Defendant denies making any representations to Plaintiff and disclaims any knowledge of representations made by NorVergence.  (Answer ¶15, 17, 22, 26-30, 35, 41-42.)  In addition, because Plaintiff can not establish damages without first establishing liability, the risks associated in litigating the "hell or high water" clause discussed above would significantly affect this factor.  In light of the above, the

-11-

Court finds that the risks of establishing liability and damages weigh in favor of approval.[4]

**(6)      The Risks of Maintaining the Class Action Through the Trial**

The sixth factor evaluates the risks of maintaining the class throughout the trial.  Here, the Court has only certified the class for settlement purposes.  Under Fed .R.Civ. P 23(a), the Court can decertify or modify a class at any time during litigation if it proves to be unmanageable, and proceeding to trial would entail the risk of decertification.  As such, this factor weighs heavily in favor of settlement.

**(7)      The Ability of the Defendants to Withstand a Greater Judgment**

The seventh factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the settlement."  Girsch at 336.  Though Defendant could likely withstand a greater judgment, the request for a greater judgment would make Plaintiff's case more difficult and less likely to be settled.  In addition, this case is distinguishable from typical class action settlements in that Plaintiffs are seeking to cancel their debts under leases as opposed to a damage recovery.  As a result, this factor does not weigh against or in favor of approval.

**(8)(9)   The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and In Light of Litigation Risks.**

Finally, for the eighth and ninth factors, a court should consider how "the present value of the damages the plaintiffs would likely recover if successful, appropriately discounted for the risks of not prevailing,...compare[] with the amount of the proposed settlement."  In re Lucent, 307 F.

---

[4]Counsel for Plaintiff candidly admitted at the Fairness Hearing that after review of discovery, discussions with adversary counsel, representations of Defendant, and review of relevant case law, Plaintiff would be unable to support its legal claims.  In fact, Plaintiff's counsel candidly admitted that after considerable research, Plaintiff would be unable to withstand Defendant's motion for summary judgment pursuant to Fed. R. Civ. P. 56.

Supp. 2d at 647. Here, the settlement will result in a 33% reduction of the indebtedness owed by Plaintiff's class to the Defendant. This amounts to a net savings of $1,617,000. If Plaintiffs had chosen to proceed with litigation, they would have faced significant legal obstacles and judgment in their favor was in no way guaranteed. The settlement provides immediate and substantial benefits for the class members and is a much better option than little or no recovery at all. Thus, the reasonableness of the settlement weighs in favor of approval.

In sum, the Court finds that the balance of factors weigh in favor of approval. The Court further finds that the settlement is fair, reasonable, and adequate. Accordingly, the Court approves the settlement agreement.

### III. CONCLUSION

For the reasons expressed above, Plaintiffs' application for Final Approval of the Settlement Agreement is **granted.** The Settlement Agreement is hereby **approved**. An appropriate Order accompanies this Opinion.

    S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:      May 11, 2006
Original:  Clerk's Office
Cc:        All Counsel of Record
           The Honorable Mark Falk, U.S.M.J.
           File